SOUTHERN RAILWAY COMPANY *v.* SAMUEL WILEY.

[41 South. Rep., 511.]

1. MASTER AND SERVANT. *Railroads. Injury to servant. Defective appliances. Negligence. Assumption of risks.*

   A servant does not assume the risk of injuries resulting from defects in appliances provided by the master unless they be obvious.

2. SAME. *Contributory negligence. Use of defective appliance.*

   A servant, having no knowledge of the defective condition of a ponderous machine with which he and others were employed to work, who was injured because of its defects, was not guilty of contributory negligence because he used it in its defective condition, where the defects were unknown to him and could be discovered only by removing some of its parts.

3. SAME. *Concrete case.*

   Testimony is sufficient to establish negligence on the part of the railroad company if it show that a steam shovel operated by defendant was defective, in that the track bolster holding the circle of the crane had sunk, owing to the rotten condition of the timbers supporting it; that the attention of the company's roadmaster had been called to the defect, but he simply directed the tightening of certain bolts and ordered the use of the machine to be continued, during which the crane slipped from the circle and crushed plaintiff's ankles as he was standing on the platform operating it, and that the rotten condition of the timbers supporting the track bolster was only discovered after the accident when the shovel was taken apart.

FROM the circuit court of Tishomingo county.

HON. THOMAS J. O'NEAL, Special Judge.

Wiley, the appellee, was plaintiff in the court below; the railway company, the appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

Appellee was in the employ of appellant as cranesman, operating a steam shovel used in getting gravel from a pit on a spur

track of appellant's railroad. The steam shovel was built on a flat car, and was operated by a stationary engine, which was also located on the car. In operating the crane the cranesman, who manages the shovel, stands on a circular revolving platform at the opposite end of the car from the engine. On the occasion of the injury complained of the appellee was standing on the platform, when the chain which was attached to the crane slipped over the rim of the platform and out of the groove in which it worked, there being no guards to prevent its slipping, and caught him around the ankle and fastened him to the mast post around which the platform revolved, breaking and crushing both ankles, inflicting painful and permanent injuries, and leaving appellee a cripple for life. Appellee sued, alleging negligence on the part of the railway company in not furnishing him with safe and suitable machinery with which to work, instead of worn and decayed machinery; in not providing guards to prevent the chain from slipping; in not having the machinery properly inspected to ascertain the defects and having same repaired; and that his injuries were the direct result of such negligence. A demurrer was interposed to the declaration, which was overruled by the court, when appellant pleaded the general issue, setting up contributory negligence on the part of the appellee, and that appellee knew of the defective and dangerous character of the machinery. This appellee denied in his replication. On the trial the testimony showed that the revolving platform had lowered as a result of the rotting of the bolster supporting it and the worn condition of the washer; that the superintendent in charge of the machinery, one Redman, had reported its condition to the roadmaster, McGinnis, who came to the place where the machinery was in operation, remaining only a few minutes, walked around it and looked it over, and ordered a few bolts tightened, stating that operations could not then be suspended for repairs, but promised to have it sent to the shop for repairs later on, and ordered appellee to go ahead

with his work.  The case went to the jury on the pleading and evidence, and appellee was awarded damages to the amount of $20,000.

*L. E. Sawyer,* for appellant.

The declaration itself, taken most strongly against the pleader, precludes the plaintiff's recovery on the theory of the common-law right to have safe machinery furnished by the master to the servant.

On its face it shows plaintiff's knowledge of the defective and dangerous condition of the machinery.  The plaintiff knew the condition of the machinery.

The testimony fails to show that there was any promise made to the plaintiff to repair the machine.  There is evidence to the effect of ineffectual attempts at repairs, in which the plaintiff participated, and a statement by McGinnis, roadmaster, to Redman and Smith to go ahead until they got out enough gravel to fill the orders ahead, and then he would take the machinery to the shop.

The rule is, "Where the promise of the master to repair defects of which the servant has complained induces the servant to continue in the employment, he may recover for injuries received within a reasonable time for the repair of the defects, unless the danger is so imminent that no reasonable or prudent man would continue in the service."  20 Am. & Eng. Ency. Law (2d ed.), 127.

A conditional promise will not be sufficient.  *Wilson* v. *Winona R'y Co.,* 5 Am. St. Rep., 851.

A promise to repair after completion of work on hand will not relieve the servant of his assumption of risk.  *Standard Oil Co.* v. *Helmick,* 148 Ind., 460; *McFarlane Carriage Co.* v. *Potter,* 52 N. E. Rep., 209; *So. Pa. Co.* v. *Leash,* 2 Tex. Civ. App., 68.

The theory that notwithstanding knowledge on the part of the plaintiff, which at common law would be a complete defense,

yet in purview of Constitution Miss. 1890, § 193, and the enforcing statutes thereunder, is not of itself and alone a complete defense, is the one principally upon which the plaintiff relies.

(a) Section 193, Constitution Mississippi 1890, and the enforcing statutes thereunder are unconstitutional in that they contravene the fourteenth amendment to the federal constitution, discriminating between individuals and corporations relative to the same class of business. (b) An employe, though of a railroad corporation, engaged in the business of mining gravel, mostly for commerical purposes, is not included in the term "employe" used in said sec. 193. (c) The terms; ways, machinery and appliances as used in sec. 193, and the enforcing statutes, are applied only to ways, machinery and appliances used in the operation of a railroad. (d) The court should hold said sec. 193 unconstitutional; should hold the word "employe" as used in the section applicable to all employes of a railroad corporation, whether engaged in the operation of a railroad or in any other labor not peculiar to the operation of a railroad, and should hold that ways, machinery and appliances that may be used by railroad corporations, whether in the operation of a railroad or other work not peculiar to railroads; yet the plaintiff, an employe of the Southern Railway Company, operating this defective machinery, known as a steam shovel, cannot recover because he knew that the machinery was defective and dangerous and continued to operate it and exposed himself to the dangerous consequences and risks that no careful and prudent man would do. *Tullis* v. *L. E. & W. R. Co.,* 175 U. S., 348; *St. Louis, etc., R. R. Co.* v. *Paul,* 173 U. S., 404; *Smith* v. *Louisville, etc., R. Co.,* 75 Ala., 449; *Ney* v. *D. & S. R'y,* 20 Iowa, 347.

*W. J. Lamb,* on the same side.

If the common-law principles are to prevail in this case, then appellee is not entitled to recover, for the record shows that

appellee knew of the defective condition of this machine, and knew it for some time prior to his injury.

The case as made by the appellee seems to be an attempt to hold the defendant liable, both under the common law and under sec. 193· of the constitution of 1890, and Code 1892, § 3559. That part of the statute and the constitution which the appellee contends that gives him the right to recover is as follows: "Knowledge by any employe injured, of the defective or unsafe character or condition of any machinery, ways, or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines voluntarily operated by them."

This does not give the appellee a right to recover for the reason:

First—This section of the constitution did not intend to give a special right of recovery to the class of employes the appellee was at the time of the injury, and the law applicable to this case is the same it was before the constitution was adopted and the same principles of law should govern in this case as were applicable under the common law.

Second—Because the steam shovel was not used in operating the railroad and appellee was not doing railroad work in the constitutional meaning of the word, and hence was not an "employe" according to the constitutional meaning of the word.

Third—If the appellee was an "employe" within the constitutional meaning of the word and the constitution should be considered as applicable to work of this character and this class of employes, then the constitution and statute both would be violative of the fourteenth amendment of the federal constitution, for sec. 193 and the statute expressly provide that it is only applicable to employes of any *railroad corporation.*

In regard to the appellee not being embraced in the class of employes intended by the constitution, we submit that in all states where either by statute or constitutional provisions special

rights have been given employes of a railroad corporation, in construing these rights, and to whom they apply, it has been held without an exception to apply only to a certain class of employes and not to every one who may be working for a railroad corporation, and the class of employes given special rights by such statutes or constitutional provisions are those that may be doing work which is inherently dangerous or employes con- nected with the operations of trains. This appellee cannot come under either class.

This court in the case of *Railroad Co.* v. *Bowles,* 71 Miss., 1003 (s.c., 15 South. Rep., 138), we think shows clearly the constitution only intended to cover a certain class of employes and that every one who was working for a railroad was not an "employe" within the constitutional meaning of the word. The *Bowles case* was an action for the death of a switchman caused by a defective car, which had been hauled from near McComb City to the shops at Water Valley, Miss., to be repaired, and the court in deciding this case, said: "If, in the prosecution of its business it had used crippled cars, and an employe required to handle such cars had been injured, the provisions of sec. 193 of the constitution would have applied. But that provision has no application to the case of a car transported over the line of the company to its shops for repairs, and which has reached the place of its destination." *Railroad* v. *Bowles,* 71 Miss., 1003 (s.c., 15 South. Rep., 138).

If the hauling of a disabled car to the shops to be repaired is not *part of the business* of a railroad corporation, in the constitutional sense, then we think it equally true the mining of gravel for commerical purposes and ballasting its line of track is not *part of the business* of a railroad corporation in the constitutional sense of the word. If the appellee was not engaged in work that was intended to be embraced by the constitution, then he was not an "employe" within the constitutional mean-

ing of the word and is not protected by the constitution in this suit.

To further support our contention that the word "employe," as used in the constitution, has a technical or classified meaning, we call the attention of the court to the following:

"The driver of a tram car is not a 'person to whom the Employers' and Workmen Act, 1875, applies,' and therefore is not entitled to the benefits of the Employers' Liability Act, 1880." *Cook* v. *North Metropolitan Tramway Co.*, L. R., 18 (Q. B. D., 683); *Morgan* v. *London General O. Co.*, L. R., 13. (Q. B. D., 832).

Again: "The plaintiff was in the employment of a railway company as guard of a goods train. His main duty was to guard and conduct the train and to marshal the trucks, but it was also a part of his duty at times to assist in coupling and uncoupling the trucks and in unloading them; held, that he was not a 'workman' as defined by sec. 10 of the Employers' and Workmen Act, 1875, and was not therefore a person to whom the provisions of the truck acts applied." *Hunt* v. *G. N. R. R. Co., I.,* Q. B., 601.

The Iowa supreme court, in passing on this point, said: "That in connection with railroads the term 'employe' applies to conductors, agents, superintendents and others engaged in operating the road, and the like, and not to contractors or persons building or constructing the roadbed or laying down the ties and rails." *Ney* v. *D. & S. C. R. Co.*, 20 Iowa, 347.

In the *Ballard case* this court said, in discussing the decisions of other courts on this point, that: "The court did look to the evidence to see whether the person suing was or was not an employe, and further, whether, though an employe, he was such an employe as was actually engaged at the time in the operative service of the railroad—that is, service connected with the running of the cars." *Ballard* v. *Oil Co.*, 81 Miss., 571 (s.c., 34 South. Rep., 533).

In the case of *Akeson* v. *C., B. & Q. R. R. Co.,* 106 Iowa, 54, the supreme court of Iowa, in discussing a statute similar to our constitutional provision, said:

"The peculiarity of the railroad business, which distinguishes it from any other, is the movement of vehicles or machinery of great weight on the track by steam or other power, and the danger incident to such movements are those the statute was intended to guard against."

The second cause given above why the court should have instructed the jury to find for appellant is because the steam shovel was not used in operating the railroad and appellee not doing work necessary to the operation of the railroad, was not an "employe" of the railroad.

The case of *LeBlanc* v. *Railroad Co.,* in 72 Miss., 676 (s.c., 18 South. Rep., 381), is conclusive of this point. The case at bar is identical with the *LeBlanc case,* and the court said: "Was the Carter gravel pit 'used' in 1890 in operating the railroad?" The court held that it was not. The facts in the case at bar are the same as were disclosed in the *LeBlanc case.* Under this decision of our court we think it conclusive that the gravel pit and the mining of gravel at this pit was not done for railroad purposes within the constitutional intent, and that the constitution does not protect the appellee and give him a right to recover in this cause.

Our third reason given above why the court should have instructed the jury to find for appellant is that to hold the appellant was an "employe" and this character of work was within the constitutional intent, then the constitution and the statute would be violative of the federal constitution, under the rule of law laid down in the *Ballard case.*

No argument that we could present would sustain our contention as clearly and as forcibly as the opinion of this court in that case, and we respectfully refer the court to that case with-

out further argument on this point. *Ballard* v. *Oil Co.,* 81 Miss., 555 (s.c., 34 South. Rep., 533).

In view of the authorities cited above we do not think the appellee was an *employe* in the constitutional sense of the word.

If this case is to be tried and the appellee seeks to recover under the common law, then the appellant was entitled to a peremptory instruction. If the appellee seeks to recover under the constitutional provision, then the appellant was entitled to a peremptory instruction. The appellee is not entitled to recover in either event. The peremptory instruction should have been given for the appellant.

*T. D. Young,* for appellee.

The declaration contains a statement of the facts constituting the cause of action as provided by the code.

Among other things it averred:

First—That appellant was negligent in not furnishing appellee with safe and suitable machinery, ways and appliances with which to work and perform his duty.

Second—That it was negligent in furnishing said wooden beam in its rotten and decayed condition.

Third—That it was negligent in furnishing appellee with said wornout and defective washer.

Fourth—It was negligent in not providing guards on said iron rim, at the top thereof, to prevent said chain from slipping over the same.

Fifth—It was negligent in not inspecting or having some one competent to inspect said machinery, ways and appliances to detect defects therein, and if any, to have the same repaired.

Sixth—That it was negligent, as was appellee's superior in charge of said car, machinery, ways and appliances, in not exercising reasonable care and caution to discover defects therein and thus prevent injuring appellee.

Seventh—That it was negligent in not repairing said defects after knowledge of their existence and promising to do so.

Eighth—That appellee's injuries were the direct result of said items of negligence.

The evidence shows appellee entered the service of appellant as cranesman on said car about June 15, 1903, and was injured on the 12th of September following.

At the time of his injury he was at his post of duty standing on a circular platform five or six feet in diameter, which, in the course of operating said shovel or dipper, was turned about an iron mast-post, five or six inches in diameter, planted in a socket on the front end of the car and standing up vertically eight or ten feet high, being held to its place by a trunion at the top. There was a heavy wooden beam placed on the front end of the car and extending from one side of it to the other. On that rested the whole weight of the crane equipment, including the platform on which appellee stood; a large, heavy and power-ful boom log eighteen or twenty inches in diameter one way, eight or ten inches the other, and eighteen or twenty feet in length, fas-tened at its lower end to said mast-post about which it worked and extending up and out at an angle of forty-five degrees, and hav-ing suspended from its remote and by means of a geacy arm a large metal shovel or dipper capacitated when loaded to hold about three thousand pounds.

Between said platform and said wooden beam was a metal washer, provided to prevent friction in turning the dipper right and left, and from left to right, as occasion required in its use, dipping up gravel from the ground and thence delivering the same upon empty cars for transportation over the railroad for ballast thereon or for commercial purposes.

Said washer from long continued use had become worn, and had lowered the platform, and to that extent the chains rose higher up on the iron rim or bands about which they worked in the operation of said crane, thus rendering them more likely to slip over the top of the rim and injure the operator.

It is not contended that appellee did not know that the plat-

form on which he stood in the performance of his duty was some lower than it originally was, nor that he did not know that the iron band or rim about which said chain worked was without guards, but it is contended by appellee, and the evidence plainly shows, that he did not know what caused said platform to be lower, and did not know of the rotten condition of the timber or wooden beam across the end of the cars on which rested the said platform, boom log, dipper arm and said dipper, and when loaded, as it was when the accident happened, there also rested on it, unknown to plaintiff, the load of about three thousand pounds of gravel suspended in the air eighteen or twenty feet away.    It was not any part of his duty to inspect or repair the same, but that such duty was devolved upon appellant, and that its failure to perform the same resulted directly in the injury complained of.

This court, in the case of *Buckner* v. *Railroad Co.,* 72 Miss., 873 (s.c., 18 South. Rep., 449), held that an action against a railroad company by a section foreman, to recover for personal injuries sustained in operating a handcar, that the declaration of the plaintiff was not demurrable on the ground of not showing negligence when it averred that the handcar furnished plaintiff was defective in having a broken wheel and a lever that made its operation dangerous to those on it, and that these defects were the direct and immediate cause of the injury.    Because sec. 193 of the constitution was applicable thereto.

It was also held by this court, in *Welsh* v. *Railroad Co.,* 70 Miss., 20 (s.c., 11 South. Rep., 723), that a switchman in the employ of a railroad company whose duty it was to ride on the switch engine and open and close switches and couple cars, his usual station being on the footboard of the engine, from which he fell while engaged in the performance of his duty because of the insecure fastening of the footboard, which caused it to give away when he stepped upon it, was entitled to the benefit of sec. 193 of the constitution.

Even if this court should deny appellee the benefit of sec. 193 of the constitution, he is nevertheless entitled under the pleadings, evidence and record in this cause to recover as at common law.

The evidence clearly shows that the proximate cause of appellee's injuries was the giving away of the timbers from rottenness on which the platform on which he stood in the performance of his duties, and on which all of said crane appliances of great weight rested, and that he did not know of their rottenness at or before the time of his injuries, and that it was not his duty to inspect or look after the condition of said timbers, whereas it was appellant's duty to do so, and keep the same in repair, which it recklessly failed to do. *Hough* v. *Railroad,* 100 U. S., 217; *Railroad Co.* v. *Holt,* 11 Am. & Eng. R. R. Cas., 206; *Porter* v. *Railroad,* 2 Am. & Eng. R. R. Cas., 44.

WHITFIELD, C. J., delivered the opinion of the court.

The evidence in this case shows the grossest and most outrageous negligence on the part of the appellant company in not furnishing appellee with safe machinery and appliances with which to work, especially in furnishing a wooden beam or bolster truck, as one of the witnesses called it, in an utterly rotten and decayed condition, and in not properly inspecting said machinery and appliances and having the same put in safe condition after repeated notice and with full knowledge of their utterly unsafe character. The proximate cause of this injury is shown with sufficient clearness by the testimony to have been the rotten condition of the woodwork of the truck, or the wooden beam, or as some of the witnesses call it, the truck bolster. This rotten wood, not visible from the outside, gradually crumbled and gave way, and thus the chain slipped over the top of the rim of the cylinder and the injury followed. The witness, Redman, who was an employe of the Southern Railway Company, the appellant here, engaged in operating a steam shovel, makes out an overwhelming case for the plaintiff, so far as the negligence

aforesaid is concerned. He points out all the particulars in
which the machinery and appliances were defective, testifies
positively that the plaintiff stood in a position which was danger-
ous in consequence of the "circles" dropping down too much,
and shows that the chain was not the chain that originally
belonged to the machinery; that it was defective, and not such a
chain as should have been used. He testified: "*Q.* Detail to
the court and jury what happened when he got hurt. *A.* Well,
the chain came over the circle there, and caught him against the
mast-post, and that is the reason he got hurt. *Q.* How came it to
come over the top of the circle? *A.* The front end of the
machine was lower than it originally ought to be. *Q.* How
came it to be lower than it ought to be? *A.* The woodwork of
the truck, known as the 'truck bolster,' where the central casting
is placed on the boom deck of the car, was rottened out and sunk
down, and the timber on the front end was rotten, and by that
means it swagged down a portion of the machine, and that is
how it came to get lower." He further testified that when the
beam was taken off, and they raised the circle off and took the
bolts out, "you could take that wood with your hand and pull it
off, down until it was nothing; what you might call just like
ashes, most. The inside was plumb rotten." He again ex-
pressly says: "The more this wooden circle worked, the more
it dropped down, and that had been going on for some three
months." He was again asked if anybody could not see that,
and he stated that they could not; there was nothing there to see,
and "that a man could not get in there and examine." When
asked if the plaintiff could have seen it, he said: "If he looked
through the circle he could." Redman further testified that Mr.
McGinnis came from Tuscumbia, Alabama, having been pre-
viously notified fully of the condition of this machinery, for the
purpose of inspecting it; that he only stayed about twenty or
thirty minutes; walked around it, and directed him to tighten
up the truck rods and to do some other wholly futile things; and

that when he (Redman) told him of the trouble with the machinery, and that the situation had given him a great deal of trouble; that "the machinery was down so low on the bearings that it would not go down, and showed him the condition, his response was: 'Well, Johnnie, God damn it, go ahead anyhow.'" This was the remarkable conduct on the part of the appellant's agent; this the style of inspection; this the utterly willful and reckless disregard of the duty of putting this machinery in such condition as to be safe as regards the life and limbs of employes. Another witness, Smith, says that McGinnis said to Mr. Redman: "John, I cannot afford to stop the shovel now," and that Redman said: "I don't think that we can run it any longer; it has got to go to the shop," and that Mr. McGinnis then said: "I can't afford to stop it at this time; Memphis is wanting some gravel." And again he stated that McGinnis said to Redman: "Try to get enough ahead to fill the orders, and then he would take it in the shop and fix it up;" but before he did so the accident occurred.

Without wasting any further time on detailed statement of the testimony as to the negligence of the company, it is sufficient to say that it is overwhelmingly shown that the company was negligent; not only negligent, but manifesting the utmost unconcern as to the safety of the employes charged with the duty of operating this miserable machinery. We have quoted this much with the double purpose of showing the negligence of the company, and also of showing the very important fact that this negligence clearly renders the company liable on common-law principles, unless the plaintiff can be shown to have had knowledge of the rotten condition of this interior wooden work within the circle, and thus be shown to have been guilty of contributory negligence in continuing to operate the machinery after such knowledge. We think a clear case of liability is shown at common law, and we do not, therefore, deal with any asserted liability of defendant company under sec. 193 of the constitution. The only defense, therefore, which the appellant could possibly make,

was to show, and to show clearly, that the plaintiff had knowledge of the rotten condition of the interior timbers of this machinery, sometimes called by witnesses "truck bolster," the sinking of which is shown to be the proximate cause of the injury.   We have given this record careful and painstaking examination on this point, with the result that we are unable to say that the verdict of the jury, which found that he did not know, is manifestly and plainly wrong.   It was a question of fact for the jury to settle, and we think that, after the evidence is carefully considered, it must be held to be such, on this point, as that the verdict of the jury may fairly be supported.   We certainly cannot say that it is manifestly wrong—the result of prejudice, passion, or corruption.   As already shown, the witness, Redman, an employe of the appellant itself, stated that the plaintiff could not have known the condition of this inside wood, unless he could have seen through the circle, and that he himself did not know it until after the machinery was sent to the shop and taken to pieces, so that the interior could then be examined.   The appellee himself testified that he knew nothing about how the sinking down of the machinery occurred—"how the circle came to be lower."   And he further expressly testified that he knew nothing of the rotten condition of the timber under the platform on which he stood.   It may very well be that appellee knew that the circle, bound with iron bands, was without sufficient guards, and that he may have observed, generally, the condition of the machinery on the outside, open and visible to the naked eye; but these things were not the proximate cause of the injury, and it is fully shown, in this testimony, that he could not, by any possibility, have known of the utterly rotten condition of the interior timber of this circle.   No amount of ingenuity can obscure the plain fact that his injury was attributable alone to the rotten condition of the interior wood of this circle, or truck bolster, or wooden beam.   It was well said by the United States supreme court, through Mr. Justice HARLAN, one of the greatest justices

that ever occupied a seat upon that exalted tribunal, in *Hough* v. *R. R. Company,* 100 U. S., 217 (25 L. ed., 612), that the "negligence of the master, in respect to supplying physical means and agencies for the conduct of his business, is not one which the servant, in legal contemplation, is presumed to risk, for the obvious reason that the servant who is to use the instrumentalities provided by the master, has ordinarily no connection with their purchase in the first instance, or with their preservation or maintenance in suitable condition after they have been supplied by the master." In *Porter* v. *Railroad Co.,* 71 Mo., 66 (36 Am. Rep., 454), it is held: "It is not incumbent upon the servant to search for latent defects in machinery or implements furnished him by his employer; but he has, without any investigation, the right to assume that they are safe and sufficient for the purpose." We think this is sound common sense, and sound law as well.

The plaintiff, Wiley, shows that when McGinnis and Redman and Smith "walked around" the shovel, he did not stay with them all the time while they were examining the machinery, and knew nothing about Mr. McGinnis' orders as to repairing it. He says again positively that he did not know the condition of the machinery when he went to work there, but that, later on, he found out the condition of part of it, meaning, of course, the part he could see and observe. He further shows that he and Redman never had any talk "when the roadmaster came or after he came, about the condition of the machinery; that that was no part of his business." Further he says, and this is very important, that he only walked around the shovel once; that he walked around it to find out what McGinnis and Redman were talking about, and that Redman was showing him the tank trucks under the tank; that McGinnis did not instruct him to do anything, and that the only instructions he got were from Redman, and they were simply to "get some wrenches and tighten up the bolts." He further says that he knew nothing about the washer being worn down, and never saw it until after he was hurt. The

fact was, it was an improper one, did not fit, and was never used. He further says he never heard anything about sending the machinery to the shop, and that the failure to tighten the bolts had nothing to do with the accident. When it is remembered that we must take the whole testimony together, and that according to the testimony of Redman, the appellant's employe, he himself did not know the rotten condition of the timber until after the machinery had been taken to the shop, and that the plaintiff himself could not have known it unless he "could have seen through the circle"—that is; through the wood—and that the plaintiff's testimony shows that he knew nothing as to the interior condition of these timbers, it cannot be said that the jury did not have evidence enough to find that the plaintiff did not know of the rotten condition of the interior timbers within this circle, unobservable to anybody on the outside. The crumbling and rottening and the gradual sinking was a continuous process, proceeding in a very slow and gradual way and on the inside of the circle. It was a latent defect, not a patent defect.

We are, therefore, clearly of the opinion that the verdict rests upon evidence amply sufficient to support it on the common law cause of action. The negligence of corporations in respect to machinery, ways and appliances, their refusal to use the improved appliances science is constantly affording them, although directed so to do by congress itself, has come to be known of all men and is an evil—a great and pernicious evil—that the courts of the country, so far as their legitimate power is concerned, should stamp out. There must be some regard for the sacredness of human life; there must be more concern about the sacredness of human limbs, even if the lives and limbs be those of the employes of these great corporations. The "God-damn-it,-Johnnie,-go-ahead-anyhow" style of attention to the nondelegable duty of the master to supply to employes safe machinery and appliances can meet at the hands of this court nothing short of the sternest condemnation.

*Let the judgment be affirmed.*